IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN WHITE, # M24350, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 13-cv-00646-JPG |
| | ) |
| ALLAN MARTIN, | ) |
| SCOTT RHINE, | ) |
| KAREN JAIMET, | ) |
| S.A. GODINEZ, | ) |
| ED ORTEGA, | ) |
| HARRY ALLARD,  and | ) |
| JACKIE MILLER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff John White, an inmate at Stateville Correctional Center ("Stateville"), brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while he was housed at Shawnee Correctional Center ("Shawnee").  Plaintiff's original complaint was dismissed without prejudice (Doc. 8).  Plaintiff's amended complaint (Doc. 9) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
>   (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### I.     The Amended Complaint

Plaintiff White was convicted in 2011 of violating an order of protection; he was sentenced to an 18-month term of imprisonment, to be followed by mandatory supervised release ("MSR"), including a one-year period under GPS monitoring. Plaintiff was slated to be released from prison on April 20, 2012, but because he has been unable to secure an approved release site, he has, in effect, been forced to serve his MSR term in prison. Plaintiff's principal contentions are that, by ignoring his many requests for assistance in securing appropriate post-release placement, and by not performing their duty as prescribed under 730 ILCS 5/3-14-2(b), the defendant prison officials have violated the Due Process Clause of the Fourteenth Amendment and subjected him to continued incarceration in violation of the Eighth Amendment. The defendants are characterized as being deliberately indifferent to Plaintiff's situation. It is also alleged that Plaintiff has been incorrectly labeled a "sex offender," which has put him in physical danger. White seeks compensatory and punitive damages, as well as injunctive relief in the form of a transfer from Shawnee.

The named defendants are:  Warden Allan Martin; Field Services Representative Scott Rhine; Clinical Services Supervisor Karen Jaimet; Director of the Illinois Department of Corrections ("IDOC"), S.A. Godinez; Illinois Department of Corrections Placement Resource Unit Supervisor, Ed Ortega; Harry Allard; and Administrative Review Board ("ARB") member Jackie Miller.

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into three counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:  All Defendants have ignored Plaintiff's requests and grievances and have otherwise not assisted Plaintiff in finding a post-release placement site, in violation of the Fourteenth Amendment;**
>
> **Count 2:  All Defendants have ignored Plaintiff's requests and grievances and have otherwise not assisted Plaintiff in finding a post-release placement site, in violation of the Eighth Amendment; and**
>
> **Count 3:  Defendants Godinez and Miller labeled Plaintiff a "sex offender," thereby placing him in physical danger, in violation of the Eighth Amendment.**

## II.  Discussion

 "Section 1983 creates a federal remedy against anyone who, under color of state law, deprives 'any citizen of the United States ... of any rights, privileges, or immunities secured by the Constitution and laws.' " *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012) (quoting 42 U.S.C. § 1983).  In terms of the basic elements of a Section 1983 action, it is clear that at all relevant times the defendants were acting under color of state law.

### A. <u>Counts 1 & 2</u>

The amended complaint indicates that Counts 1 and 2 regarding Plaintiff's blocked release are asserted under 42 U.S.C. § 1983, and habeas corpus relief is not sought. Of course, the undercurrent of the complaint is a desire for prison officials—now officials at Stateville—to assist Plaintiff in securing an approved placement location so that he can be released without automatically being in violation of the terms of his supervised release.

### <u>*Heck v. Humphrey*</u>

In *Heck v. Humphrey,* 512 U.S. 477, 487 (1994), the Supreme Court held that a challenge to the validity or length of a prison sentence cannot proceed under Section 1983 unless the sentence has been invalidated. *See also Nelson v. Campbell,* 541 U.S. 637, 646–47 (2004); *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973). But, Section 1983 relief *may* be available where its success will not necessarily undercut the legality of confinement, such as in a challenge to parole procedures.[1] *Wilkinson v. Dotson,* 544 U.S. 74, 81–82 (2005); *see also Grennier v. Frank,* 453 F.3d 442, 444 (7th Cir. 2006) (noting that Section 1983 is proper for prisoners seeking release on parole).

As already noted, White's Section 1983 action does not seek immediate release; nor does he attack his sentence; and, he does not take issue with the requirement that he secure approved housing before he is released on MSR. Thus, this appears to be one of the rare situations where Section 1983 may be utilized without first upending the sentence.

---

[1] White correctly notes that there is a difference between MSR and parole. *See People v. Lee*, 979 N.E.2d 992, 1000-01 (Ill. App. Ct. 4th Dist. 2012).

***Murdock v. Walker***

The amended complaint generally tracks legal arguments recently addressed in a class action, *Murdock v. Walker*, Case No. 08-cv-01142, 2014 WL 916992 (N.D.Ill. March 10, 2014). Although not a controlling legal precedent, the district court's order in *Murdock* offers an excellent explanation of the statutory scheme at issue in the present case.

In *Murdock*, the district court recognized a class consisting of IDOC inmates, who:

> (1) have been, or will be, convicted of a sex offense; (2) have served the maximum term of imprisonment for their sentence; (3) have been authorized for release to mandatory supervised release (parole) by the Illinois Prisoner Review Board; (4) were, or will be, denied release by the Defendants because the class member's approved housing site, as determined by the Prisoner Review Board, was disapproved by one or more of the Defendants; and (5) as a result of Defendants' conduct the class member was not released.

*Murdock*, 2014 WL 916992, *1 FN.1 (internal quotation marks omitted). Although a class was certified, summary judgment was recently granted to the defendant IDOC employees.

As fully spelled out in *Murdock* and abbreviated now, prisoners convicted of offenses that qualify them as "sex offenders" under 730 ILCS 150/2[2], have a statutorily prescribed process of release and particular conditions for release, including certain residency requirements. The IDOC and the Prisoner Review Board ("PRB") each have separate and distinct roles in the process. In accordance with 730 ILCS 5/3-14-2(b), the IDOC "shall assign personnel to assist persons eligible for parole in preparing a parole plan. Such Department personnel shall make a report of their efforts and findings to the Prisoner Review Board prior to its consideration of the case of such eligible person." The PRB considers the IDOC's input and the inmate's plan and

---

[2] The amended complaint does not reveal White's underlying conviction(s) or the details of his MSR violation. However, since White does not dispute that the Sex Offender Treatment Act, 730 ILCS 150/1 *et seq*., is applicable to him, the distinction is not particularly relevant to the issues in this case. Thus, the Court may use the term "parole" to generally refer to release on MSR under the Act.

sets the inmate's release date. The IDOC then becomes responsible for monitoring the terms of release (even though physical release may not have occurred). Consequently, if the parole conditions prescribed by the PRB have not been met, the IDOC will not release the inmate; rather, he remains imprisoned until the conditions are met or the MSR term expires. *See Murdock*, 2014 WL 916992, *2-3. Securing an approved "host site" requires certain information to be entered into the IDOC computer system, telephone interviews and various IDOC approvals. In *Murdock* a systemic constitutional violation was at issue. This procedural scheme was labeled the "turnaround practice" and characterized as a "Kafkaesque loop." *Murdock*, 2014 WL 916992, *4-5.

A liberty interest in release was recognized in *Murdock* because release dates were set by the PRB; nevertheless, no procedural due process violations were found. More specifically, the district court concluded that the violation of Illinois statutory procedures for release did not offend the minimum due process requirements under the Fourteenth Amendment; and there was insufficient evidence to demonstrate the requisite *mens rea* or an IDOC practice of making it impossible to satisfy the conditions for release prescribed by the PRB.

It is not clear at this time whether *Murdock* has a preclusive effect on Plaintiff White's claims. The amended complaint indicates that Plaintiff had been given a specific release date, which has come and gone because he has not been able to secure an approved host site. Plaintiff does not take issue with the statutory procedural scheme; rather, he alleges that defendants, individually, were deliberately indifferent and blocked his way. Therefore, at this early time, *Murdock* is not viewed as precluding this suit.

**The Fourteenth Amendment**

Count 1, regarding Defendants' failure to adequately assist Plaintiff in securing a host site implicates the Due Process Clause of the Fourteenth Amendment in terms of both substantive and procedural due process. Both aspects of the Fourteenth Amendment depend upon a "liberty interest" being at issue. *See Washington v. Glucksburg*, 521 U.S. 702, 719-22 (1997) (recognizing two different aspect to the Due Process Clause and discussing substantive due process at length); *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 449-60 (1989) (discussing procedural due process at length).

There is no Fourteenth Amendment substantive due process right to early release from prison. *Toney–El v. Franzen,* 777 F.2d 1224, 1227 (7th Cir. 1985). *See also Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Nevertheless, a state may create a protected liberty interest in parole and/or MSR through its statutes and regulations governing the decision-making process. *See Greenholtz,* 442 U.S. at 12. Illinois has not done so by merely prescribing an early release program. *See Hill v. Walker*, 948 N.E.2d 601, 605 (Ill. 2011) (parole statute did not create a liberty interest); and *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001) (a discretionary release scheme does not entail "liberty" or "property" and is merely an opportunity, which requires less process than is required for losing something to which one is already entitled).

The amended complaint does, however, indicate Plaintiff White was actually granted release. In *Hayden ex rel. A.H. v. Greensburg Community School Corp*., 743 F.3d 569, 575 (7th Cir. 2014), the Court of Appeals for the Seventh Circuit recently explained that freedoms

protected in the Bill of Rights (as well as such fundamental rights as the right to marry and to bodily integrity) are protected under the Due Process Clause. Whether the PRB has created only a conditional interest in release deserves further examination. Therefore, Count 1 shall proceed against all named defendants.

**The Eighth Amendment**

Count 2 also pertains to keeping Plaintiff in prison past his scheduled release date, but Count 2 is premised upon the Eighth Amendment's prohibition against cruel and unusual punishment. Although only notice pleading is required under Federal Rule of Civil Procedure 8, it is helpful to keep in mind that to prevail on an Eighth Amendment claim Plaintiff will have to establish that Defendants intentionally prevented his release after his custodial sentence had ended, or that they were deliberately indifferent to the risk that their actions would lead to that result. *See generally Farmer v. Brennan,* 511 U.S. 825, 842 (1994). *See also Burke v. Johnston,* 452 F.3d 665, 667 (7th Cir. 2006) (incarceration after prescribed sentence has expired violates Eighth Amendment if it was due to deliberate indifference); *Campbell v. Peters*, 256 F.3d 695, 701–02 (7th Cir. 2001) (looking at personal liability and entitlement to qualified immunity in tandem, the appellate court indicated that a prison official's awareness may be inferred when the law confers an unambiguous right to release).

Again, the Court must take the alleged facts as true, meaning that it is assumed that Plaintiff has a *right* to release. Furthermore, the amended complaint, unlike the original complaint, states a plausible claim of deliberate indifference relative to why Plaintiff has not been assisted in securing a host site. With that said, it should also be noted that this is a shaky claim because a defendant can never be held liable under Section 1983 for negligence. *Daniels*

*v. Williams*, 474 U.S. 327, 328 (1986). For these reasons, Count 2 shall proceed against all defendants.

### B. Count 3

Count 3 pertains to allegations that, in a letter responding to Plaintiff's July 15, 2012, grievance regarding the host site issue, IDOC Director Godinez and ARB member Miller referred to Plaintiff as a "sex offender"—which Plaintiff asserts is incorrect. According to the amended complaint, the letter was sent to Plaintiff and, when he had copies made, the inmate tasked with making the copies read the letter and started the false rumor that Plaintiff was a child molester—a "cho mo"—causing Plaintiff to be threatened and physically attacked by other inmates (Doc. 9, pp. 6-7). Plaintiff contends Godinez and Miller were deliberately indifferent to Plaintiff's safety when they signed and sent the letter "without first checking out whether or not [Plaintiff] was a sex offender" (Doc. 9, p. 8).

Allegations that a prison official placed an inmate's safety at risk by labeling him, for example, a snitch, which then resulted in physical injury, can state a colorable Eighth Amendment claim. *See Saunders v. Tourville,* 2004 WL 874781 at 1 (7th Cir. April 19, 2004) *citing Babcock v. White,* 102 F.3d 267, 272 (7th Cir. 1996). *See also Irving v. Dormire,* 519 F.3d 441, 449 (8th Cir. 2008) (officer's attempt to have other inmates attack plaintiff may violate Eighth Amendment, even where the plaintiff was not actually assaulted); *Northington v. Jackson,* 973 F.2d 1518, 1525 (10th Cir.1992) (Eighth Amendment claim stated where guard labeled prisoner a snitch with the intention to do harm by inciting inmates).

In his attempt to re-plead a colorable Eighth Amendment claim Plaintiff has pleaded himself out of Court on Count 3. At most, the pleaded facts reflect negligence on the part of Godinez and Miller. A defendant can never be held liable under Section 1983 for negligence.

*Daniels v. Williams*, 474 U.S. 327, 328 (1986). Furthermore, personal involvement and causation are required for Section 1983 liability. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005); *Herzog v. Village of Winnetka, Ill.*, 309 F.3d 1041, 1044 (7th Cir. 2002). Plaintiff describes the letter from Godinez and Miller as being addressed to Plaintiff and being private until Plaintiff turned it over to another inmate to be copied. It was that inmate who interpreted "sex offender" to mean "child molester," and it was that inmate who spread the false rumors about Plaintiff. Therefore, Count 3 fails and will be dismissed with prejudice.

### C. Injunctive Relief

Having dismissed Count 3, and in light of the fact that Plaintiff has now been transferred from Shawnee to Stateville, his prayer for injunctive relief in the form of a transfer from Shawnee is moot.

### III. Pending Motions

**Status & Copies**

Since filing his amended complaint, Plaintiff has also filed multiple motions for "status" and for "copies" of any order regarding the amended complaint (Docs. 14, 19, 22). Plaintiff apparently feared that the Court issued an order during the time Plaintiff was in transit from Shawnee to Stateville. The Clerk of Court will automatically send Plaintiff a copy of this order; therefore, Plaintiff's motions (Docs. 14, 19, 22) will be denied as moot.

**Counsel & Library Access**

Plaintiff's motion for access to the Stateville law library (Doc. 21) and his second motion for appointment of counsel (Doc. 20) will be referred to a magistrate judge for consideration.

IV.     **Disposition**

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 3**, the Eighth Amendment endangerment claim against Defendants **S.A. GODINEZ** and **JACKIE MILLER**, is **DISMISSED with prejudice**.  Accordingly, the related prayer for injunctive relief in the form of a transfer from Shawnee Correctional Center is **MOOT**.

**IT IS FURTHER ORDERED** that **COUNTS 1 and 2** shall proceed against Defendants **ALLAN MARTIN**, **SCOTT RHINE**, **KAREN JAIMET**, **S.A. GODINEZ**, **ED ORTEGA**, **HARRY ALLARD** and **JACKIE MILLER**.

**IT IS FURTHER ORDERED** that Plaintiff's motions for status and copies (Docs. 14, 19, 22) are **DENIED AS MOOT**.

The Clerk of Court shall prepare for Defendants **ALLAN MARTIN**, **SCOTT RHINE**, **KAREN JAIMET**, **S.A. GODINEZ**, **ED ORTEGA**, **HARRY ALLARD** and **JACKIE MILLER**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending

the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including Plaintiff's motion for access to the Stateville Correctional Center law library (Doc. 21), and second motion for appointment of counsel (Doc. 20).

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 1, 2014**

*s/ J. Phil Gilbert*
**United States District Judge**
